IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. ARCH INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: ___CIV-18-503-R___ |
| | ) | |
| 1. EVERGREEN PRESBYTERIAN | ) | |
| MINISTRIES, INC. d/b/a; | ) | |
| EVERGREEN LIFE SERVICES, | ) | |
| A foreign corporation, | ) | |
| | ) | |
| 2. RADFORD ELLIOTT, individually, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| 1. KYLA MCCOMBS, individually, | ) | |
| And as next best friend of M.M., | ) | |
| A minor child. | ) | |
| | ) | |
| Interested Party. | ) | |

## COMPLAINT

Plaintiff, Arch Insurance Company, states as follows:

### I. INTRODUCTION

1.     This is a declaratory judgment action to determine whether Arch Insurance Company ("Arch") owes a duty to defend and/or indemnify Defendants in the lawsuit styled *Kyla McCombs v. Evergreen Presbyterian Ministries and Elliott Radford*; Case No. CJ-2017-5196, filed on September 14, 2017, in the District Court of

Oklahoma County, State of Oklahoma ("Underlying Suit"). The Underlying Suit concerns injuries to M.M., a minor child, from a molestation incident that took place in Oklahoma.

## II. PARTIES

2.     Arch is a Missouri company with its principal place of business in New Jersey.

3.     Defendant Evergreen Presbyterian Ministries, Inc., d/b/a Evergreen Life Services, ("Evergreen") is incorporated in the state of Louisiana, engaged in business in the state of Oklahoma, and may be served at their corporate headquarters, Evergreen Life Services, 2101 Highway 80, Haughton, Louisiana 71037, or through its agent for service of process at 7725 West Britton Road, Oklahoma City, Oklahoma County, State of Oklahoma.

4.     Defendant Elliott is a resident of Garfield County, Oklahoma.

5.     Party in Interest, Kyla McCombs, is the named plaintiff and next best friend of M.M., a minor child, in the Underlying Suit. Ms. McCombs resides in Payne County, Oklahoma.

## III. JURISDICTION

6.     This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Missouri and New Jersey. Defendant Evergreen is a citizen of Louisiana. Defendant Elliott and Party in Interest McCombs are citizens of Oklahoma. The amount in controversy exceeds $75,000.00, excluding interest and costs.

7.     An actual and justiciable controversy currently exists because the parties disagree as to whether Arch owes a duty to defend or indemnify Defendants Elliott and/or Evergreen in the Underlying Suit.

## IV. Venue

8.     Venue is proper in the Western District of Oklahoma under 28 U.S.C. § 1391(b)(2) because Defendant Evergreen operates its business within the district, Defendant Elliott resides within the district, and Ms. McCombs, the Party in Interest resides within the district.

## V.  Facts Alleged In The Underlying Suit

9.     In the Petition in the Underlying Suit, Ms. McCombs alleges the following:

   a.     On or about June 12, 2016, Defendant, Radford Elliott was in attendance of a service at House of Prayers. At this time, Defendant Radford was under the care and 24-hour supervision of Defendant Evergreen and its employees, agents and volunteers.

   b.     At the time of the incident, Plaintiffs were also guests at House of Prayers for the aforementioned service. During this time, Defendant Radford molested Plaintiff M.M. in the women's handicap bathroom located in the church.

[*See Petition*, at ¶ 4-11 (Ex. 1)]

10.     Ms. McCombs asserts claims of negligent supervision against Evergreen, and Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress ("IIED/NIED") against Defendants Elliott and/or Evergreen.  Ms. McCombs seeks damages in excess of Seventy-Five Thousand Dollars ($75,000.00) on each

claim. Further, Ms. McCombs seeks punitive damages due to Defendants Evergreen's and Elliott's "reckless disregard for the rights of others and their gross negligence." [*See Petition* (Ex. 1)].

## VI. THE SUBJECT POLICY

11.     Arch issued Policy NCPKG0064507, effective July 01, 2015 to July 01, 2016, to Evergreen ("the Subject Policy") [(*See* Declarations, Ex. 2)].[1]  The Subject Policy provides Commercial Property Coverage, Commercial General Liability ("CGL") Coverage, and Commercial Crime Coverage for Evergreen's operations in multiple states, including Oklahoma. The Subject Policy also includes Social Services Professional Liability ("SSPL") Coverage and a Sexual or Physical Abuse Liability ("SPAL") Endorsement on a claims-made basis.  The coverages implicated in this action are limited to the CGL Coverage, SSPL Coverage and the SPAL Endorsement.

## VII. THE POLICY DOES NOT PROVIDE COVERAGE UNDER PROVISIONS APPLICABLE TO BOTH DEFENDANTS

12.     The Subject Policy contains the following coverages that may be implicated by the claims made by Ms. McCombs in the Underlying Suit:  (1) the CGL Coverage, (2) Social Services Professional ("SSPL") Liability Coverage, and (3) the Sexual and Physical Abuse Liability ("SPAL") Endorsement.

### A.  The CGL Coverage

13.     The CGL Coverage contains the following insuring agreement:

---

[1]     Exhibit 2 is a compilation of excerpts of the Subject Policy.

**SECTION I – COVERAGES**

**COVERAGE A --- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

> **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [. . .]

> **b.**  This insurance applies to "bodily injury" and "property damage" only if:
> (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [. . .]

[Form CG 00 01 04 13, Page 1 of 16 (Ex. 2)].

14.    Under the Definitions Section of the Subject Policy, "'occurrence' means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  [*Id*. at Page 15 of 16 (Ex. 2)].

15.    Ms. McCombs asserts a claim for Intentional Infliction of Emotional Distress ("IIED") against Defendants Elliott and/or Evergreen.  [Petition, at ¶¶ 17-25 (Ex. 1)].  A claim for IIED is not an "occurrence" as defined by the CGL Coverage of the Subject Policy.

16.    The CGL Coverage is subject to the following "Abuse or Molestation Exclusion":

The following exclusion is added to Paragraph **2. Exclusions of Section 1. – Coverage A – Bodily Injury And Property Damage Liability** and

Paragraph **2. Exclusions of section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

    a. Employment;
    b. Investigation;
    c. Supervision;
    d. Reporting to proper authorities, or failure to so report; or
    e. Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above.

[Form CG 21 46 07 98, Page 1 of 1 (Ex. 2)].

17.     Ms. McCombs' claims against Defendants Elliott and/or Evergreen are excluded by the "Abuse or Molestation Exclusion" to the CGL Coverage in the Subject Policy.

18.     The CGL Coverage also contains the following exclusion:

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[Form CG 00 01 04 13, Page 2 of 16]. "Bodily injury" includes mental anguish or emotional distress under the CGL Coverage. [SSPGLE Endorsement, Form CG 00 01 04 13, Page 4 of 7 (Ex. 2)].

19.   Ms. McCombs alleges Defendant Elliott was under a 24-hour/day supervision of Defendant Evergreen and Defendant Evergreen knew of Defendant Elliott's sexual proclivity for children. [Petition, at ¶¶ 7 & 8 (Ex. 1)]. Ms. McCombs' claims against Defendants Elliott and/or Evergreen are excluded by the "Expected or Intended Injury Exclusion."

### B.   The SSPL Coverage

20.   The Social Services Professional Liability Form - Claims Made (SSPL) Coverage contains the following insuring agreement:

**SECTION I - COVERAGE**

**1.      Insuring Agreement.**

> a.      We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as "damages" because of a "professional incident" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those "damages." We may, at our discretion, investigate any incident or "professional incident" and settled any claim or "suit" that may result. [. . .]

[Form 00 GL0298 00 10 06, Page 1 of 12 (Ex. 2)].

21.   A "professional incident" means "any negligent act, error or omission, actual or alleged, which arises out of the rendering of, or failure to render, 'professional services' by you or by another for whom you are legally responsible."

7

[*Id.* Page 12 of 12].  "Professional services" means "activities performed by an insured or on behalf of an insured, to aid persons and /or families seeking assistance from you in the management of their lives, including 'counseling services.'"  [*Id.* at Page 12 of 12 (Ex. 2)].

22.     The SSPL Coverage contains the following Conditions:

a.     This insurance applies to "damages" because of a "professional incident" in the course of performing "professional services" for your insured organization only if:

[. . .]

>       (2)     The "professional incident" did not occur before the Retroactive Date shown in the Declarations or after the end of the policy period; and

>       (3)     A claim for "damages" because of the "professional incident" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provided under Section V – Extended Reporting Period.

[. . .]

c.     A claim by a person or organization seeking "damages" will be deemed to have been made when notice of such claim is received and recorded by any insured or by us, whichever comes first.

[Form 00 GL0298 00 10 06, Pages 1 and 2 of 12 (Ex. 2)].

23.     The SSPL Coverage is subject to the following exclusions:

**2.     Exclusions**.

This insurance does not apply to:

a.  Any "damages":

(1) Expected or intended from the standpoint of the insured. This exclusion does not apply to "damages" resulting from the use of reasonable force to protect persons or property;

[. . .]

m.   Any claim arising out of or in any way related to actual, alleged or threatened sexual or physical abuse.  This includes, but is not limited to claims arising out of or related to sexual assault, sexual misconduct, sexual molestation or battery, physical assault or battery by another person(s) and any failure to prevent or report any of the acts described in this paragraph.

[Form 00 GL0298 00 10 06, Pages 2 and 4 of 12 (Ex. 2)].

24.   In addition to the exclusions cited above, Section V – Extended Reporting Period of the SSPL Coverage allows a claim for "damages" first made within twelve (12) months after the policy period ends to be deemed as made on the last day of the policy period.  [*Id.* at Pages 10 and 11 of 12].   Twelve months after the end of the policy period is July 1, 2017.

25.   Ms. McCombs' claims against Defendants Elliott and/or Evergreen were first made and reported to Arch on or about October 5, 2017.   Conditions b. (3) and c. are not met, and there is no coverage for Ms. McCombs' claims against Defendants Elliott and/or Evergreen under the SSPL Coverage.

### C.  The SPAL Endorsement

26.   The Subject Policy also contains the Sexual or Physical Abuse Liability Endorsement – Claims Made ("SPAL Endorsement").

27.   The SPAL Endorsement includes the following insuring agreement:

9

## I.     COVERAGES

SECTION I – COVERAGES OF THE COMMERCIAL GENERAL LIABLITY COVERAGE CLAIMS MADE FORM, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY AND COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY is modified by the addition of the following:

### 1.     INSURING AGREEMENT

a.     We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "personal injury" to which this insurance applies arising out of "sexual or physical abuse".

We have the right and duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "personal injury" to which this insurance does not apply. We may, at our discretion, investigate any act of "sexual or physical abuse" and settle any claim or "suit" that may result. [. . .]

[Form 00 GL 0299 00 01 10, Page 1 of 5 (Ex. 2)].

28.     "Sexual or physical abuse" is defined in relevant part as:

[E]ach, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual misconduct or sexual molestation performed by one person or two or more people acting together. Each, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual misconduct or sexual molestation committed by, participated in by, directed by, instigated by or knowingly allowed to happen by one or more persons shall be considered one "sexual or physical abuse" act regardless of:

1. The number of parties;
2. The period of time which the acts of physical abuse, sexual abuse, sexual misconduct or sexual molestation took place; and
3. The number of such acts or encounters.

"Sexual or physical abuse" consisting of or compromising more than one act of physical abuse, sexual abuse, sexual misconduct or sexual molestation shall be deemed to take place, for all purposes within the

scope of this policy, at the time of the first such encounter.

[Form 00 GL 0299 00 01 10, Page 5 of 5 (Ex. 2)].

29.     The SPAL Endorsement has the following Conditions to coverage:

a.  The "sexual or physical abuse" incident must take place on or after the retroactive date of this endorsement, but before the end of the policy period and within the coverage territory.  **The claim must be made and reported to us or our authorized representative in writing during the policy period or any applicable extended reporting period.**  This endorsement does not apply to a "sexual or physical abuse" incident which on the effective date of the endorsement you knew, or could have reasonably foreseen would be the basis for a claim.

[Form 00 GL 0299 00 01 10, Page 1 of 5 (emphasis added) (Ex. 2)].

30.      The claim was first reported to Arch Insurance on or about October 5, 2017, well after the date of the policy period, July 1, 2016.  It is clear the conditions of the SPAL Endorsement were not met, thereby precluding coverage.

**VIII.   THE POLICY DOES NOT PROVIDE COVERAGE UNDER PROVISIONS APPLICABLE TO ONLY TO DEFENDANT ELLIOTT**

31.     Defendant Elliott is not an "insured" under the Subject Policy or any of its provisions, and Arch does not owe a duty to defend or indemnify Defendant Elliott in the Underlying Suit.

**A.     The CGL Coverage**

32.     The CGL Coverage states in relevant part:

**1.**     If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

[Form 00 01 04 13, Page 9 of 16 (Ex. 2)].

33.    Defendant Elliott is not designated as an Insured in the Declarations, and thus does not fall into any of the categories in Paragraph 1 of the Insuring Agreement. Nor is Defendant Elliott an Insured under the broadened definition under the Social Services Premier General Liability Enhancement Endorsement ("SSPGLE Endorsement").

34.    The SSPGLE Endorsement contains the following broadened definition of **WHO IS AN INSURED**:

Paragraph **2** of **Section II --- - Who Is An Insured** is deleted and replaced by the following:

**2.**    Each of the following is also an insured: but only while working within the scope of their duties for the insured:

a.      (i) "Employees";

12

(ii) "Volunteer Workers";

(iii) Independent Contractors

[. . .]

b.    Medical directors and administrators, including professional persons, are also insureds;

c.    If you are an organization other than a partnership or joint venture, your managers and supervisors are also insureds;

d.    If you are a limited liability company your members are insureds, but only with respect to their duties related to the conduct of your business;

e.    Any organization and subsidiary thereof which you control and actively manage on the effective date of this endorsement;

f.    Any person or organization that has financial control of you or owns, maintains or controls premises occupied by you and requires you to name them as an additional insured but only with respect to their liability arising out of:

     **(1)** Their financial control of you; or

     **(2)** Premises they own maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

g.    Any state or political subdivision subject to the following provision:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent, or control and to which this insurance applies:

     **(1)** The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away

openings, sidewalk vaults, street banners, or decorations and similar exposures; or

**(2)** The construction, erection, or removal of elevators; or

**(3)** The ownership, maintenance, or use of any elevators covered by this insurance.

However, the insurance afforded for any organization and subsidiary thereof not named in the Declarations as a Named Insured, does not apply to injury or damage with respect to which an insured under this endorsement is also an insured under another policy, or would be an insured under such policy but for its termination or the exhaustion of its limits of insurance.

h.     Students in training, but not for "bodily injury" or "property damage" arising out of his or her rendering or failure to render professional services to patients;

i.      Your members but only with respect to their liability for your activities or activities they perform on your behalf;

j.      Your trustees or members of the board of governors while acting within the scope of their duties as such on your behalf;

k.     Any entity you are required in a written contract (hereinafter called Additional Insured) to name as an insured is an insured but only with respect to liability arising out of your premises, "your work" for the Additional Insured, or acts or omissions of the Additional Insured in connection with the general supervision of "your work" to the extent set forth below:

[. . .]

[Form 00 GL0295 00 02 09, Page 3 of 7 (Ex. 2)].

35.     As a patient and/or client of Evergreen, Defendant Elliott does not fall into any of the categories enumerated in Paragraph 2.  He was not an employee,

volunteer or independent contractor of Evergreen, nor does his status as a patient and/or client fit within any of the remaining categories in the SSPGLE Endorsement's broadened definition of **WHO IS AN INSURED**.  It is clear Defendant Elliott is not an Insured under the CGL Coverage in the Subject Policy.

### B. SSPL Coverage

36.     The Subject Policy's Social Services Professional Liability (SSPL) Coverage Form-Claims Made also contains definitions of who is an insured under that coverage.  Paragraph 1 of **Section II – WHO IS AN INSURED** in the SSPL Coverage uses almost identical language as the corresponding provision in the CGL Policy.  For the same reasons, Defendant Elliott does not qualify as an insured under Paragraph 1 of Section II of the SSPL Coverage.

37.     Paragraph 2 of **Section II – WHO IS AN INSURED** in the SSPL Coverage states as follows:

**SECTION II – WHO IS AN INSURED**

[. . .]

2.     Each of the following is also an insured:

a.     For acts within the scope of their employment by you or while performing duties related to the conduct of your business;

        (1) Your employees;
        (2) Your volunteers;
        (3) Your "contract workers"; and
        (4) Students in training.

[. . .]

15

b.     Any social service organization you newly acquire or form, or which you     newly control and actively manage will qualify as a Named Insured if there is   no   other   similar   insurance   available   to   that organization. However, coverage under this provision:

(1)     Is afforded only until the 90th day after you acquire, form, or manage the organization or the end of the policy period, whichever is earlier; and
(2)     Does not apply to "professional incidents" that occurred before   you   acquired,   formed,   controlled   or   managed   the organization.

c.     Any entity with which you have a written contract requiring that such   entity be made an insured under this policy. However, such entity shall be an     insured only for covered "damages" which result from your "professional services" under that contract.

No person or organization is an insured with respect to the conduct of any   current   or   past   partnership,   joint   venture   or   limited   liability company that is not shown as a Named Insured in the Declarations.

[Form 00 GL0298 00 10 06, Page 6 and 7 of 12 (Ex. 2)].

38.     As a patient and/or client of Evergreen, Defendant Elliott was not an employee, volunteer, contractor or student in training of Evergreen.  Defendant Elliott does not fit within any of the remaining categories of **WHO IS AN INSURED** under the SSPL Coverage of the Subject Policy.

### C. SPAL Endorsement

39.     The **WHO IS AN INSURED** provisions of the Sexual or Physical Abuse (SPAL) Endorsement are identical to the SSPL Coverage definition discussed above with one exception.  Defendant Elliott cannot be considered an insured under the SPAL Endorsement for the same reasons.

40.     The SPAL Endorsement also eliminates as an insured "any person . . .

who participated in . . . 'sexual or physical abuse.'"  [Form 00 GL0299 00 01 10, Pages 3 and 4 of 5 (Ex. 2)].

41.    Ms. McCombs alleges Defendant Elliott sexually molested or abused M.M.  [Petition, at ¶ 11 (Ex. 1)].  Defendant Elliott therefore is not an insured under the SPAL Endorsement in the Subject Policy.

### IX.  THE POLICY PRECLUDES COVERAGE FOR PUNITIVE DAMAGES

42.    Ms. McCombs alleges a claim for punitive damages against Defendants Elliott and/or Evergreen.  [Petition, at ¶ 26 (Ex. 1).

43.    The Subject Policy does not provide coverage for any of the claims by Ms. McCombs against Defendants Elliott and/or Evergreen.  The Policy contains the following definitions:

> 4.    "Damages" means the awards or settlements for actual, compensatory civil damages arising out of an allegation of a "Professional Incident."  "Damages" does not include:
>
> a.    Punitive/exemplary "damages" [. . .]

[Form 00 GL 0298 00 01 06, Page 11 of 12 (Ex. 2)].

> 25.    "Damages" means a monetary judgment, award or settlement, but does not include:
>
> a.    Punitive/exemplary "damages" [. . .]

[Form  00GL0299  00  01  10, Page  5  of  5  (Ex. 2)].   Therefore, coverage is precluded for the claim for punitive damages.

44.    In addition, Oklahoma's public policy bars coverage for punitive damages except in limited circumstances not present in the Underlying Suit.

17

## X.  CONFLICT OF LAWS

45.     The substantive laws of Oklahoma govern the interpretation of the Subject Policy to the extent a conflict of laws exists.

## XI.  RESERVATIONS AND FUTURE PLEADING

46.     Arch reserves the right, as necessary, to add claims and defenses that may become apparent as discovery and investigation proceeds.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Arch Insurance Company prays for judgment declaring the rights and obligations of the parties, and in particular, for a declaration that it owed no duty to indemnify defendants against the claims raised in the Underlying Suit, and for judgment awarding damages consisting of reimbursement of the amounts it advanced to settle those claims.  Finally, Arch Insurance prays for such other and further relief, at law or in equity, for which it may show itself justly entitled, and for which it shall ever pray.

Respectfully submitted,


By:     s/Kerry R. Lewis
        Kerry R. Lewis, OBA #16519
        klewis@rhodesokla.com
        RHODES HIERONYMUS JONES
              TUCKER & GABLE, PLLC
        P.O. Box 21100
        Tulsa, OK 74121-1100
        (918) 582-1173; (918) 592-3390 [fax]

        ***ATTORNEYS FOR PLAINTIFF ARCH INSURANCE COMPANY***